# Globe Iron Roofing and Corrugating Co. *v.* Thacher.

*Bill in Equity by Material-man, to enforce Statutory Lien; or, as Creditor without Lien, to set aside Fraudulent Conveyances.*

1. *Filing bill in double aspect.*—A creditor can not file a bill in a double aspect, seeking as contractor, or material-man, to enforce a statutory lien (Code, § 3018-48), to set aside subsequent conveyances of the property (with other property) as void, and to subject it to the satisfaction of his debt; or, in the alternative, as a simple-contract creditor without a lien, to set aside the conveyances as fraudulent.

2. *Statutory lien of contractor or material-man; verification of.*— Under the statute requiring the claim of an original contractor or material-man to be verified "by the oath of the claimant, or some other person having knowledge of the facts" (Code, § 3022), if the claimant is a private corporation, the affidavit of one of its officers, to the effect that the statement of the claim "is true as to the best of his knowledge and belief," without more, is not a sufficient verification.

3. *Validity of mortgage, as against creditors; allegations of fraud.*— When a creditor files a bill to set aside, on the ground of fraud, a mortgage or deed of trust executed by an insolvent corporation, which purports to convey all of its property to secure the payment of certain in-

[Globe Iron Roofing and Corrugating Co. v. Thacher.]

terest-bearing bonds payable ten years after date, and which reserves to the corporation the right to use the property until foreclosure; alleging that it was really given to secure an antecedent debt to two banks, which had taken some of the bonds as collateral security, and was intended to hinder, delay and defraud other creditors; that these debts were partly simulated, and that they included usurious interest; these allegations, in connection with the provisions of the mortgage, are sufficient to impeach it, showing the reservation of a benefit to the debtor, a fraudulent intent, and participation by the beneficiaries.

4. *Same.*—A mortgage executed by an insolvent debtor, though with a fraudulent intent on his part, for the benefit of certain *bona fide* creditors, who are not charged with knowledge or notice of such fraudulent intent, or any participation therein, will not be declared fraudulent as against other creditors; and this principle is not affected by the facts, that the debtor is an insolvent corporation, and that the preferred creditors, or some of them, are stockholders or officers.

5. *General assignment for benefit of creditors; validity of.*—A general assignment for the benefit of creditors, which fixes no time for foreclosure, and reserves to the grantor the use of the property until foreclosure, is not on that account fraudulent as against creditors, since the assignee may at any time foreclose, and any creditor may compel him to do so.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. THOMAS COBBS.

[ ] The appeal in this case is sued out from a decree, or interlocutory order, sustaining a demurrer to a bill, which was filed on the 30th of June, 1888, by the Globe Iron Roofing and Corrugating Company, a corporation chartered under the laws of Ohio, against Edwin Thacher, Daniel Mooar, the Decatur Iron Bridge and Construction Company, a private corporation under the statutes of Alabama, the First National Bank of Decatur, and the Exchange Bank of Decatur. The complainant claimed to be a creditor of the Decatur Iron Bridge and Construction Company to the amount of $659.25, balance due for materials furnished under contract, and used in the construction of certain buildings and improvements on lots particularly described; and sought to enforce a statutory lien on this property, to cancel certain conveyances, hereinafter described, as void, and to have the property sold, or so much thereof as might be necessary to satisfy the debt, with interest and costs; and also, in the alternative, as a creditor by simple contract without a lien, to set aside the conveyances as fraudulent and void, and subject the property to the satisfaction of the complainant's debt, as more particularly shown by the prayer hereinafter set out.

The conveyances sought to be set aside were: (1.) A mortgage, or deed of trust, dated November 1, 1887, executed by the Decatur Iron Bridge and Construction Com-

[Globe Iron Roofing and Corrugating Co. v. Thacher.]

pany, and signed in its name, "*per* Geo. S. Mooar, president;" by which was conveyed to Daniel Mooar, as trustee, all the property then owned by said corporation, or which it might afterwards acquire "while this instrument remains in force," with its franchises, reserving to the corporation the right to use the same until foreclosure; "to be held in trust by said Mooar, his successor or successors, to secure the payment of the principal and interest of the following described bonds, issued and to be issued as the necessities of said company may require; which said bonds are dated November 1st, 1887, payable to bearer, amounting in all to $30,000, payable ten years after date, bearing annual interest at eight per cent., payable semi-annually, on the 1st of May and November each year, at the First National Bank of Decatur, Alabama; there being sixty of said bonds, for $500 each, having interest coupons attached: Now, the true intent and object of this instrument is to secure the payment of the aforesaid bonds and coupons, as they may fall due, to whomsoever may be the holders thereof; a failure on the part of said company to pay any of said coupons, for three months after the same shall have become due, and shall have been presented at the office of the company and refused, shall cause the principal of said bonds at once to become due and payable, and a right of action for the foreclosure of this instrument shall at once accrue. But, if the said company shall well and truly pay off and discharge said bonds, and interest thereon, according to the true intent and meaning hereof, then these presents are to be void," &c.

(2.) A mortgage said to have been executed by said company on the 30th of April, 1888, to said Daniel Mooar, conveying all of its property "to secure him for the alleged sum of $5,500, and to save him harmless against all loss and damage he might sustain by reason of his indorsement and suretyship for said company on debts due to the First National Bank of Decatur, and three years salary to said defendant Edwin Thacher, as chief engineer of said company." A copy of this mortgage was not made an exhibit to the bill, but it was alleged in this connection, that the principal stockholders of the company were said George S. Mooar, president; Daniel Mooar, his son, who was its attorney and counsellor; Edwin Thacher, chief engineer; and Robert Curtis, vice-president and general manager.

(3.) A general assignment executed by said company to said Thacher as trustee, in trust for the benefit of all its

Vol. lxxxvii.

[Globe Iron Roofing and Corrugating Co. v. Thacher ]

creditors, specifying their names and the amount of their respective debts.    This instrument was alleged to have been executed on the 9th of May, 1888, and that date is signed at the bottom of the copy which is made an exhibit to the bill, with the name of E. L. Olmstead as secretary; but there is no signature to the instrument, and there are no attesting witnesses.

In reference to these instruments the bill contained the following allegations: "Complainant further alleges, that the execution of said mortgage on the 1st of November, 1887, was for the purpose of securing an antecedent debt, but complainant does not admit that the whole amount claimed by said banks was or is justly due from said company; on the contrary, it alleges that the debt due them from said company is much less than the amount claimed, and that the execution of said mortgage, or deed of trust, of November 1st, 1887, and of said mortgage of April 30th, 1888, was an effort on the part of said company to make the said Daniel Mooar and said two banks preferred creditors, and the same is fraudulent as against complainant and its other creditors; that the said deed of trust to said Daniel Mooar was executed after said company became indebted to said banks, and said deed was executed, and the bonds therein mentioned were issued and hypothecated by said company, as collateral security for said indebtedness; and that a portion of said indebtedness is usurious interest charged by them, at different times, to said company, and that said company was insolvent" when each of said instruments was executed.

In the original bill, the complainant sued "in behalf of itself and such other creditors as may desire to join in this suit;" but these words were struck out by amendment, and the prayer of the bill as amended was in these words:  "That your Honor take jurisdiction of this cause, and, on final hearing thereof, decree and enforce complainant's lien on said property for materials furnished; that the said property described in this bill, and set out in Exhibit C [the claim filed asserting a lien], be subjected to the payment of said debt, with interest thereon, and that complainant's lien be declared superior to said deed of trust and mortgage executed to said Daniel Mooar; and that said deed of trust, said mortgage and said assignment be, as to complainant, declared void; and that said property be sold, under an order of this court, to satisfy complainant's lien, to the amount of their said debt, with interest and costs.    Or, if your Honor finds that

complainant has not the lien herein claimed under section 3018 of the Code of Alabama, then complainant prays that said deed of trust and said mortgage to Daniel Mooar, and said assignment to Edwin Thacher, be set aside and declared void; that all of the property thereby conveyed, or so much thereof as may be necessary, be sold under a decree of this court to pay said debt and costs;" and the general prayer was added.

The defendants filed separate demurrers to the bill, specifying the following (with other) grounds of demurrer: 1st, to the whole bill, because (1) it asked inconsistent and repugnant relief in the alternative, and (2) because it joined distinct causes of action; 2d, to so much thereof as claimed a statutory lien for materials furnished, because the verification of the claim was insufficient, and because a compliance with statutory provisions in other respects was not shown; 3d, to so much of the bill as assailed the several conveyances on the ground of fraud, because (1) the allegations of fraud were too general and indefinite, and because (2), on the facts alleged, the conveyances were not shown to be fraudulent. The chancellor sustained these several grounds of demurrer, and his decree is here assigned as error

KIRK & ALMON, for the appellants.—(1.) The statute gives a contractor, or material-man, a right to come into equity to enforce his lien; and provides that, even in actions at law, all persons interested in the property may be made parties to the suit.—Code, §§ 3048, 3030. (2.) The complainant was an original contractor within the terms of the statute, and the verification of the claim was sufficient. *Lane & Bodley Co. v. Jones*, 79 Ala. 156; *Chandler v. Hanna*, 73 Ala. 394; *Townsend v. Steel*, 85 Ala. 580; *Ruhl v. Rogers*, W. Va., 2 S. E. Rep. 798. (3.) The bill is not multifarious, nor is there a misjoinder of defendants.—*Tindal v. Drake*, 51 Ala. 574; *Merritt v. Phœnix*, 48 Ala. 87; *Forrest v. Luddington*, 84 Ala. 1; 84 Ala. 600. (4.) The alternative prayers for relief are neither repugnant nor inconsistent. In each aspect of the bill, the complainant seeks only to subject the property to the satisfaction of its debts, and to set aside conveyances which are a cloud on the title. The bill, as originally framed, was in favor of the complainant and such other creditors as might choose to come in and make themselves parties; but this was struck out by amendment, and the complainant was left suing alone as a creditor

[Globe Iron Roofing and Corrugating Co. v. Thacher.]

by simple contract. Two or more creditors by simple contract only can not unite in a bill to set aside a fraudulent conveyance.—*Railway Co. v. McKenzie*, 85 Ala. 546. But a mortgagee may join as complainant in a creditor's bill, although he asserts a prior lien on the property.—Story's Eq. Pl., §§ 101, 286. (5.) On the averments of the bill, when assailed by demurrer, each of the conveyances is fraudulent and void as against creditors.—*Sims v. Gaines*, 64 Ala. 392; *Seaman v. Nolen*, 68 Ala. 463; *Clews v. Woods*, 9 Amer. Dec. 346; *Com. Bank v. Brewer*, 71 Ala. 574; *Benedict v. Renfro*, 75 Ala. 121; *LeGrand v. Nat. Bank*, 81 Ala. 123; *Meyer v. Cook*, 85 Ala. 417.

BRICKELL & HARRIS, *contra.*—(1.) The bill presents the complainant's case in a double aspect, asking relief, in the alternative, which is inconsistent and repugnant. In one aspect, the complainant asserts a statutory lien as contractor or material-man; in the other, asks relief as a creditor by simple contract without a lien; and the averments and prayer, in each aspect, are equally repugnant. Such a bill can not be maintained.—*Micou v. Ashurst*, 55 Ala. 607: *Eufaula v. McNab*, 67 Ala. 588; *Mooy v. Talcott*, 72 Ala. 210; *Heyer v. Bromberg*, 74 Ala. 524; *Lehman v. Meyer*, 67 Ala. 404; *Rives v. Walthall*, 38 Ala. 333. (2.) The claim of a contractor's lien must fail, because it was never verified as the statute requires.—Code, § 3018; *Young v. Stoutz*, 74 Ala. 574; *Welch v. Porter*, 63 Ala. 225; 2 Jones on Liens, § 1454; Phill. Mech. Liens, § 357. (3.) The allegations of the bill, as to fraud in the several conveyances assailed, are too vague and indefinite.—*Flewellen v. Crane*, 58 Ala. 627; *Pickett v. Pipkin*, 64 Ala. 520; *Morgan v. Morgan*, 68 Ala. 80; *Chamberlain v. Dorrance*, 69 Ala. 40. (4.) The allegations of the bill do not show fraud in any of the conveyances.—Burr. Assignments, 166, § 118; *Baskins v. Calhoun*, 45 Ala. 582; *Fielder v. Varner*, 45 Ala. 429; *Pope v. Brandon*, 2 Stew. 401; *Turner v. McFee*, 61 Ala. 468; *Steiner v. McCall*, 61 Ala. 406; *Turnilick v. Marbury*, 91 U. S. 589; *Graham v. Lockhart*, 8 Ala. 9; *Abercrombie v. Bradford*, 16 Ala. 560; *Shackelford v. P. & M. Bank*, 22 Ala. 238.

McCLELLAN, J.—The bill in this case is filed in a double aspect. In one view, the claim sought to be enforced is that of a lienor under sections 3018 *et seq.* of the Code;

in the other, the right relied on is that of a simple-contract creditor. In one aspect, it is sought only to enforce the demand of the complainant; in the other, it is sought to subject the property of the Decatur Bridge Company to the satisfaction of the claims of other creditors, as well as the complainant. In the phase of the case first presented, the effort is to subject only certain town lots belonging to the bridge company, to the satisfaction of a particular debt; in the phase last presented in the bill, the effort is to subject not only these lots, but all the property of the defendant company, to the satisfaction not only of the complainant's debt, but also of the debts of all other *bona fide* creditors. By one set of averments, it is attempted to make a case, in which complainant's claim will be held superior to certain conveyances made by the bridge company, to, or which enured to the benefit of, the other defendants; by other allegations, the attempt is made to have these conveyances—which in this part of the bill are treated as nominally superior to complainant's claim—declared void as to the debt of complainant, and other *bona fide* creditors. It thus appears that, whether regard be had either to the character or amounts of the claims involved in the respective aspects of the bill, or to the quantity of property to be affected by the decree, or to the character or extent of the relief sought in the two presentments of the cause of action, there is a manifest dissimilarity, repugnance and inconsistency in and between the two parts of the bill of complaint.

The cardinal requirement with respect to bills framed in the alternative is, that each alternative must entitle the complainant to precisely the same relief, in kind if not in degree; so that, if the bill be confessed, the court, in decreeing the relief prayed on one state of facts, would also respond and grant the relief appropriate to the alternative state of facts. That the relief which would be appropriate to either of the alternatives of this bill would be entirely inappropriate to the other, we entertain no doubt.—*Lehman v. Myer*, 67 Ala. 403; *Micou v. Ashurst*, 55 Ala. 607; *Heyer Bros. v. Bromberg*, 74 Ala. 528; *Gordon v. Ross*, 63 Ala. 363; *Moog v. Talcott*, 72 Ala. 210.

The complainant was an original contractor, within the meaning of the statute giving to mechanics and materialmen liens on buildings or improvements, to the making or erection of which they have contributed labor or material; and had six months from the accrual of the debt involved in

[Globe Iron Roofing and Corrugating Co. v. Thacher.]

this suit, in which to file a verified statement of the claim in the office of the probate judge of Morgan county. We do not understand that it is seriously denied that the statement required by section 3022 of the Code was filed within six months after the debt accrued. It is, however, strenuously insisted, that the statute was not complied with in respect to the verification of the statement so filed. The section last referred to requires that the statement must "be verified by the oath of the claimant, or some other person having knowledge of the facts."

It is thoroughly well settled in principle, and by the adjudged cases, that liens of this class are dependent for their vitality upon a strict compliance, in all matters of substance, with the provisions of the statutes under which alone they have any existence. There is deemed no inequity, says Mr. Phillips, in this strict adherence to the requirements of the law, in view of the fact that the lienor claims, by the terms of the enactment, to fasten an extraordinary right on the lands of another, with priority over all other creditors. The claimant must seek his lien under the statute, and in accordance with its terms, or not at all.—Phillips on Mechanic's Liens, §§ 10, 297; *Chandler v. Hanna*, 73 Ala. 394.

The verification of the statement filed in this case was made by an officer of the claimant corporation. It may be conceded, that under the circumstances, an officer of the incorporated company is to be considered "the claimant," within the meaning of the clause quoted above, and does not come within the terms, "other person having knowledge of the facts." It may be further conceded, that when the statutory affidavit is made by the claimant himself, it need not affirmatively show that the affiant knew the facts; and hence, that the verification made by an officer of a corporation need not affirm that he was cognizant of the facts to which he deposed. The existence of such knowledge, in the absence of anything to the contrary, will be presumed. But the statute, we have no doubt, from its very terms, contemplates and requires that this extraordinary charge should not be placed on the property of another, unless the facts out of which the lien springs are vouched for on oath by some person, whether the claimant himself or another, who knows them to exist. The affidavit relied on here is, that "the foregoing statement is true as to the best of the affiant's knowledge and belief." This affirmatively shows that the affiant, whether he be considered the claimant or another

30

person, did not have a *knowledge* of the facts embraced in the statement. He does not swear, that he knows them to be true, or that they are true, without more; but, on the contrary, the construction of the verification most favorable to the lien would be, that some of the facts were known to be true, and others, though not within the knowledge of the affiant, were believed to be true. This verification is insufficient, and fails to fix the lien on the property of the bridge company.—*Dorman v. Crozier*, 14 Kan. 224; *Childs v. Bostwick*, 12 Daly, N. Y. 15; *Dennis v. Coker*, 34 Ala, 61; Jones on Liens, § 1454.

In its second alternative, the bill seeks to have certain conveyances executed by the bridge company declared fraudulent and void, and the property covered by them subjected to complainant's debt, With respect to one of these conveyances—the deed of trust of November, 1887—it is alleged that the bridge company was, at the time of its execution, insolvent; that it covered all of the grantor's property; that it was made to hinder, delay and defraud other creditors of the grantor; that it reserves a benefit to the company, in that the bonds for which it is security do not mature for ten years, during which time the property conveyed is to continue in the possession and use of the company; that said deed of trust was executed to secure the payment of $30,000 in negotiable bonds; that these bonds were issued and delivered to the First National and Exchange Banks of Decatur, as collateral security for an antecedent debt due to them; that this debt was alleged to be $30,000, and bonds to that amount were issued and deposited to secure the same, but that in truth and fact the debt was less than that sum, and, moreover, was made up in part of usurious interest charges. As we read the averments of the bill relied on to show fraud in this deed of trust, it charges, to recapitulate, insolvency on the part of the bridge company; conveyance of all its property to secure these two creditors; reservation of benefit; intent to hinder, delay and defraud; notice of this intent on the part of the real beneficiaries under the deed, the banks, and their constructive participation in the covinous purpose resulting from their acceptance of the issues of the deed of trust to secure an usurious debt, and simulation of the debt itself, without regard to usury; and when to the case thus made is added the suspension of the banks' right of action on their debt, resulting from their acceptance of the collateral security, having ten years in which to mature,

[Globe Iron Roofing and Corrugating Co. v. Thacher.]

and the delay of other creditors necessarily growing out of this fact, we are clearly of the opinion, that these averments are sufficient to impeach the deed of trust of November 1, 1887, as fraudulent and void as to the complainant.

Whatever may have been the intent of the bridge company in the execution of the mortgage of April, 1888, there is no allegation of bad faith on the part of any of the beneficiaries thereunder; no imputation of simulation of the debts sought to be secured; no averment of notice on the part of the creditors preferred by the mortgage, of the *mala fides* of the grantor, nor of their participation in such intent, if it existed. Clearly, these allegations do not make out a case of fraud. A debtor may prefer a *bona fide* creditor, whatever intent on the part of the debtor may characterize the act, provided the creditor does not participate therein.—*Crawford v. Kirksey*, 55 Ala. 282; *Hodges v. Coleman*, 76 Ala. 103. And the fact that the *bona fide* creditors who are thus secured by the mortgage of April, 1888, or some of them, are stockholders and officers of the bridge company—which fact constitutes the only special infirmity laid against this instrument—does not render it fraudulent. *Twinlick v. Marbury*, 91 U. S. 589.

The only other matter urged upon our attention relates to the general assignment of May, 1888, which is alleged to be rendered fraudulent by reason of the reservation of a benefit to the assignor. It is true, no time is fixed for the foreclosure of this assignment, and the use of the property, until foreclosure is had, is reserved to the bridge company. Any creditor had the right, at any time, to compel, and the assignee, at all times, had the power to proceed with, foreclosure; and the reservation of the possession and use of the property contingent upon the exercise of the right to foreclose, thus residing in both the assignee and beneficiaries, will not avoid the conveyance for fraud.—*Graham v. Lockhardt*, 8 Ala. 9; *Abercrombie v. Bradford*, 16 Ala. 560; *Shackelford v. P. M. Bank*, 22 Ala. 238.

The decree of the chancellor, in so far as it sustained demurrers to those averments of the bill which sought to impeach the deed of trust of November, 1887, is erroneous, and must be reversed. We discover no error in the rulings of the court below on the other grounds of demurrer.

Reversed and remanded.